## AMERICAN BRAKE SHOE & FOUNDRY CO. v. NEW YORK RYS. CO.

### (District Court, S. D. New York. May 25, 1921.)

**Street railroads ⬅58—Lessor held to have lost claim to insurance fund subsequently passing to receiver.**

A lessor of a street railway, with the real estate belonging thereto, including car barns, under a lease requiring the lessee to keep the buildings insured and to use the proceeds of any insurance money received in repairing the buildings, is not entitled to the balance of a special fund derived from insurance payments for a fire loss on the buildings as against the receiver of the lessee, where it was undisputed that after the fire the lessee and its sublessee had expended more than the amount of the insurance in repairing and improving the buildings, and the lessor and lessee and the mortgage trustees of the latter had joined in a contract providing for the deposit of the insurance money in a fund to be paid out only on the order of the lessee and the trustees.

In Equity. Suit by the American Brake Shoe & Foundry Company against the New York Railways Company. Proceeding by the Eighth Avenue Railroad Company for an order requiring the receiver of the defendant to pay to the applicant the balance due in a special account. Application denied without prejudice to the claim, if any, of petitioner in personam against the defendant.

Michel Kirtland, of New York City, for petitioner.

Winthrop & Stimson, of New York City (George Roberts, of New York City, and Kurt F. Pantzer, of Indianapolis, Ind., of counsel), for receiver.

MAYER, District Judge. This is a proceeding by the Eighth Avenue Railroad Company, in which the Eighth Avenue Company prays the court to order the receiver of the New York Railways Company to pay to it the sum of $46,402.41, which is alleged to be the balance of the principal in a certain special account, together with interest from October 1, 1918. The receiver denies that the Eighth Avenue Company has any interest in any specific moneys held by the receiver, and contends that, if the Eighth Avenue Company has any claim regarding the lease of the properties or the fire of 1907, it is a claim in personam for breach of lease against the New York Railways Company, and not a claim in rem against any specific fund.

On November 23, 1895, the Eighth Avenue Railroad Company let its railroad and real estate to the Metropolitan Street Railway Company for a period of 99 years. Receiver's Exhibit 1. copy on pages 203 to 235 of N. Y. Rys. Receivership Record. Among the plots of real estate conveyed was one running generally 475 feet on Forty-Ninth street from Eighth avenue and 100 feet on Eighth avenue. The re-

mainder of the block between Forty-Ninth and Fiftieth street was also conveyed by the lease, as was another plot on the other side of Eighth avenue. The Eighth Avenue Company's lease provided for the electrification of its street railways by the lessee. The lease further provided that the buildings on the real estate could be torn down or altered by the lessee provided other buildings of equal value be erected. The full provision in the lease is as follows:

"It is hereby mutually understood and agreed that the lessee shall have the right to alter, enlarge, tear down, rebuild, and reconstruct any of the buildings erected and now situate on any of the lands or real estate owned by the party of the first part and hereby demised, to accommodate the purposes of the railroad hereby demised, or which may become necessary or proper by reason of the substitution of motive power other than horses; but, in the case of the destruction of any of the said buildings, the lessee shall be bound to construct and erect upon the same land sufficient other buildings suitable for the purposes of the railroad hereby demised which shall be at least of equal value with the present buildings and erections thereon."

The lessee agreed to insure all buildings "in an amount equal to the value of the existing buildings now erected on said lands." The lease further provided:

"And the lessor agrees that, in case of loss, all insurance moneys payable to or received by it shall be applied to the restoring, rebuilding, or otherwise improving the leased property."

In 1895, at the time of making the original Eighth Avenue lease, the plot of land on Forty-Ninth street and Eighth avenue, comprising areas 1–A, 1–B, and 1–C on the Exhibit A, was occupied by horse car sheds, stables, and a blacksmith shop. Due to the electrification of the Eighth Avenue Railroad Company these buildings were no longer needed for the purposes of running the railroad and accordingly this land was sublet to the New York Electric Vehicle Transportation Company, by lease dated July 30, 1900. Receiver's Exhibit 2. The lease provided that the premises were to be used solely for the purpose of "housing, storing, and repairing automobiles." This necessitated the remodeling of the buildings to change them from stables into garages, and the lease specifically permitted such alterations. It is a fair inference that one of the elements taken into consideration in fixing the rental of this sublease was the fact that the lessee was obliged to make extensive improvements. Most of these were made before January 28, 1907, when a fire occurred which destroyed the building on the central portion of the plot, but a considerable amount was made thereafter. As a result of the fire, insurance was collected from a large number of insurance companies, amounting in the aggregate to $71,424.55. This constituted the so-called "Eighth Avenue insurance fund," the balance of which is the subject of the present controversy.

On June 27, 1907, the Eighth Avenue Railroad Company, the Metropolitan Street Railway Company, the New York City Railway Company (the lessee of the Metropolitan system), the Guaranty Trust Company of New York, as trustee under a Metropolitan Street Railway Company mortgage, and the Morton Trust Company, as trustee under a Metropolitan Street Railway Company mortgage, made an agreement

with the Guaranty Trust Company as depositary, wherein it was recited that:

"The parties to this agreement have certain rights and interest in and to the proceeds of the insurance on said building. * * * It is agreed: * * * First. The depositary, the party hereunto of the sixth part, shall collect and hold all proceeds of insurance on said building. Second. The depositary shall pay out said proceeds * * * upon the joint written order of the parties hereto of the second, fourth and fifth parts."

The parties of the second, fourth. and fifth parts were the Metropolitan Street Railway Company, the Guaranty Trust Company of New York, as trustee, and the Morton Trust Company, as trustee. The agreement said nothing about how the proceeds should be used, nor placed any restrictions on the disposal of the fund, except the signature of the Metropolitan Company and its two mortgagees. The contention of the receiver is that by this agreement the Eighth Avenue Company gave up any title, legal or equitable, that it had in the money and gave up all its right of control.

After the fire the receivers of the Metropolitan Street Railway Company spent $25,022.14 improving other property of the Eighth Avenue Railroad Company which was included in the lease to the Metropolitan Street Railway Company and which was not covered by the sublease to the New York Electric Vehicle Transportation Company. They thereupon withdrew from the insurance fund $25,022.14 on the joint signature of themselves and the Metropolitan mortgagees. No question is made as to the propriety of these withdrawals.

In addition to the above expenditures, the Metropolitan receivers expended after the fire on the buildings of the Eighth Avenue Company, for capital improvements, an aggregate amount of $6,867.51. After the fire the New York Transportation Company (the New York Electric Vehicle Transportation Company having changed its name) spent $46,833.10 in capital improvements on the subplot leased to it. $22,-628.96 was spent putting a roof over one story of the building which had been burned down; $10,152.37 for a sprinkler system, fire doors, etc.; $5,111.71 on masonry, carpentry, and steel work; and the balance on miscellaneous items. It thus appears that a considerable amount in excess of the fire loss fund was expended after the fire by the Metropolitan Street Railway Company or its sublessee, and this gives rise to the second defense of the receiver, which is that, if the Eighth Avenue Company had any interest in the specific moneys, it was a security interest, which ceased when the Eighth Avenue Company real estate had been improved by an amount greater than the amount of the fire loss fund.

The third contention of the receiver is that, as a result of improvements made, the Eighth Avenue Company was very much better off than it would have been if the Metropolitan Street Railway Company had left the building as stables and a blacksmith shop as they originally were. The so-called Eighth Avenue insurance fund came into the possession of the New York Railways Company. It was not acquired by reason of the fact that the New York Railways Company acquired the interest of the lessee in the Eighth Avenue lease. The records show

that it was sold in the foreclosure sale of the Metropolitan mortgages, but that it was retained by the Metropolitan receivers.

Later, when the New York Railways Company acquired from the reorganization committee substantially all of the bonds of the Metropolitan Street Railway Company and substantially all of the tort and general claims against the Metropolitan Street Railway Company and the New York City Railway Company, the New York Railways Company, as almost the sole creditor of the Metropolitan Company, petitioned the court in the Metropolitan receivership that the remaining assets in the hands of the court be turned over to it, the court reserving only sufficient amount of cash to pay a dividend on the claims which had been acquired by the New York Railways Company. This petition was made February 15, 1915. See Receiver's Exhibit 7. An order directing the delivery was made the same day. See Receiver's Exhibit 8. Thus in 1916, four years after its incorporation, the New York Railways Company, as a creditor of the Metropolitan Street Railway Company, acquired this fund. It was drawn out of the Guaranty Trust Company as depositary and could have been mingled with the general cash, although it was actually placed in a special account in the Bankers' Trust Company. If the New York Railways Company had not acquired the claims on bonds and tort claims, etc., against the Metropolitan Company, this money would have been paid to the Metropolitan creditors. The receiver contends that no interest in the Eighth Avenue can spring up because of the fact that the New York Railways Company, four years before it acquired the cash in question, acquired the interests of the Metropolitan Company in the Eighth Avenue lease.

The second and third contentions of the receiver need not now be considered. They may become important when, and if necessary to determine, the merits of the claim in personam. Each side presents arguments as to why the agreement of June 27, 1907, was entered into. The agreement, however, is so simple and clear that, to construe it, no aid is needed from surrounding circumstances, nor from contentions pro and con as to inferences which arise therefrom. The agreement, for convenient reference, is herewith set forth:

"Agreement, made June 27th, one thousand nine hundred and seven, between the Eighth Avenue Railroad Company, party of the first part, Metropolitan Street Railway Company, party of the second part, New York City Railways Company, party of the third part, Guaranty Trust Company of New York, as trustee under a certain deed of trust made to it by the said party of the second part, dated February 1, 1897, party of the fourth part, Morton Trust Company as trustee under an indenture made to it by the said party of the second part dated March 21, 1902, party of the fifth part, and Guaranty Trust Company of New York, as depositary under this agreement, party of the sixth part, witnesseth:

"Whereas, a certain car depot situated on the west side of Eighth avenue, between Forty-Ninth and Fiftieth streets, was destroyed by fire on January 28, 1907, and the loss to said building has been adjusted at seventy-one thousand four hundred thirty-seven ($71,437.00) dollars; and

"Whereas, the parties to this agreement have certain rights and interests in and to the proceeds of the insurance on said building:

"Now, therefore, for a valuable consideration, it is agreed as follows:

"First. The depositary, party hereunto of the sixth part, shall collect and hold all proceeds of insurance on said building.

"Second. The depositary shall pay out the said proceeds or any part

thereof, or any interest which may accrue thereon, or invest, or from time to time reinvest, the said proceeds, or any interest which may accrue thereon, as follows: In respect to the proceeds of insurance on said building, upon the joint written order of the parties hereto of the second, fourth, and fifth parts.

"Third. It is understood and agreed that none of the recitals contained herein is made by the parties hereto of the fourth, fifth, or sixth parts, or any of them, nor is any one of them responsible therefor in any way.

"In witness whereof each of the corporations, parties hereto, has caused this instrument to be executed in its corporate name by its president or a vice president, and its seal to be hereunto attached, attested by its secretary or an assistant secretary.

"Eighth Avenue Railroad Company,
"Joe Tate, President.
"Attest: J. G. Affleck, Secretary.
"Metropolitan Street Railway Company,
"D. B. Hasbrouck, President.
"Attest: D. C. Moorehead, Secretary.
"New York City Railway Company,
"Oren Root, Jr., President.
"Attest: Charles E. Warren, Secretary.
"Guaranty Trust Company of New York, as Trustee,
"G. G. Henery, Vice President.
"Attest: E. C. Hebbard, Secretary.
"Morton Trust Company, as trustee,
"J. K. Corbiere, Vice President.
"Attest: J. I. Burke, Secretary.
"Guaranty Trust Company of New York, as Depositary,
"G. G. Henery, Vice President.
"Attest: E. C. Hebbard, Secretary."

It will be noted that the fund—i. e., the proceeds of insurance—is not set aside nor earmarked as such for the benefit of the Eighth Avenue Railroad. On the contrary, the Eighth Avenue Railroad relinquished all control over the fund as such. The expenditure of the $25,022.14, and the withdrawing of that amount from the fund on the joint signature of the Metropolitan receivers and of the mortgage trustee was a practical construction of the agreement. Failure to expend the proceeds of insurance properly might lead to redress, but that redress could not be against the fund as a specific res.

Further discussion seems superfluous, because, before recovery of a specific fund or deposit may be had, it must affirmatively appear that the petitioner is entitled to look to the specific fund, that it has either a legal or an equitable title thereto, and that, so far as petitioner is concerned, the fund as such was preserved for it. No such situation is presented by the agreement of June 27, 1907.

The application is denied, with actual disbursements against petitioner, and without prejudice to the claim, if any, of petitioner in personam against the New York Railways Company.